**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| ROSALYN BASSETT, As the Administratrix and Personal Representative of the Estate of TERRY BASSETT, SR., | * * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NUMBER: 2:05cv1183-MEF |
| KENNETH BRELAND, et al., | * * * | |
| Defendants. | * | |

**BRIEF OF HART MANUFACTURING, INC., D/B/A HART TRAILERS,
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Hart Manufacturing, Inc., d/b/a Hart Trailers and, in support of its motion for summary judgment, hereby files the following brief.

**PROCEDURAL BACKGROUND**

This lawsuit arises out of a automobile accident occurring on Highway 183 in or near Uniontown, Alabama on March 11, 2005 which resulted in the death of Terry Bassett. The parties of relevance are:

1. <u>Rosalyn Bassett</u>: Mrs. Bassett is the Plaintiff and personal representative of the deceased Terry Bassett.

2. <u>Kenneth Caleb Breland</u>: Defendant Caleb Breland is a part owner of the horse trailer involved in the accident resulting in Mr. Bassett's death and was driving the pickup truck which was hauling the trailer at the time the accident occurred.

3. <u>Dometic Corporation</u>:  Defendant Dometic Corporation is the manufacturer of the awning and awning assembly system which was installed on the trailer being hauled by Caleb Breland at the time of the accident.

4. <u>Outlaw Conversions, LP</u>:  Outlaw Conversions is the company which installed the Dometic A&R two-step awning on the trailer involved in the Bassett accident.

5. <u>Hart Manufacturing, Inc.</u>  Hart Manufacturing is the manufacturer of the trailer shell onto which the Dometic A&R two-step awning was installed by Outlaw Conversions.

The Plaintiff commenced this lawsuit with the filing of a summons and complaint in the United States District Court for the Middle District of Alabama, Northern Division, on December 13, 2005.  On May 1, 2006, the Plaintiff filed her First Amended Complaint adding for the first time as party Defendants, Dometic, Outlaw, and Hart.  The claims made against Hart in the First Amended Complaint consist of a claim under the Alabama Extended Manufacturer's Liability Doctrine, a claim for negligence, and a claim for wantonness.  The product liability claim brought pursuant to the AEMLD asserts that the trailer and/or awning was defectively designed, manufactured, or installed and that the defect proximately caused the death of Mr. Bassett.  The Plaintiff asserts that the awning and/or trailer was defective in that it did not contain adequate safety devices to keep the awning from opening while the vehicle was in motion.  The negligence and wantonness claims assert that Hart was negligent in the manufacture of the trailer and/or awning by

failing to include adequate safety devices and further asserts that Hart negligently or wantonly failed to warn of the alleged defective condition of the trailer or awning.

Hart filed an answer entering a general denial and asserting additional defenses.

## **FACTUAL BACKGROUND**

Hart is a manufacturer of trailers, including aluminum horse trailers (Affidavit of Kay Hart). It manufactured the shell of the trailer being hauled by Caleb Breland at the time of the Bassett accident (Hart Affidavit). Hart sells and distributes its trailers through a network of dealers located and operating in several states throughout the United States (Hart Affidavit). In October, 2001 one of its dealers was DCL Trailers, LLC, a dealership operating in Philadelphia, Mississippi (Hart Affidavit). The dealer principal for DCL in October of 2001 was Dr. Duane Stokes, a Philadelphia, Mississippi veterinarian (Hart Affidavit). On October 16, 2001, almost four years before the Bassett accident, Hart sold the subject trailer to DCL (Hart Affidavit). At the time the trailer was sold to DCL, it did not have an awning or awning assembly system installed on it nor was it specially designed or manufactured to accommodate an awning (Hart Affidavit). DCL took possession of the trailer shell on October 16, 2001 (Hart Affidavit). Since that date, the trailer has been outside the control and custody of Hart and Hart did not maintain any ownership interest in the trailer sold to DCL in October of 2001 (Hart Affidavit).

In late October, 2001, after taking delivery of the subject trailer, DCL entered into a contract with Outlaw Conversions to have substantial modifications and additions made to the trailer shell, including the installation of a Dometic Corporation A&R two-step awning (Outlaw's Initial Disclosures). Hart did not have any involvement in ordering or installing the awning nor did it have any communication with DCL, Dometic, or Outlaw concerning

the sale and installation of an awning on the trailer shell sold to DCL in October of 2001 (Hart Affidavit). Hart did not enter into any agreements or contracts with DCL, Dometic, or Outlaw for the purchase and installation of an awning on the subject trailer. Hart did not have any communications of any kind with DCL, Dometic, or Outlaw concerning modifications or changes made to the trailer sold in October of 2001, including the decision to install a Dometic A&R two-step awning on the trailer (Hart Affidavit).

Documents produced by Outlaw (see Outlaw's initial disclosures) reflect that the changes and additions to the trailer, including the addition of the awning, were ordered by DCL Trailers; that DCL Trailers was billed for the changes and additions; and that DCL Trailers paid Outlaw for the work it performed.

In 2002, DCL sold the trailer with the awning installed by Outlaw to Don Nowell (Nowell Deposition at 9, 10). Mr. Nowell used the trailer until February of 2005, at which time he sold the trailer to Caleb and Jacob Breland (C. Breland Deposition at 24). Mr. Nowell denies ever operating or opening the awning at any time when it was in his possession (Nowell at 12).

On March 11, 2005, Caleb Breland, driving his father's pickup truck, was hauling the horse trailer from Philadelphia, Mississippi to Alabama to attend a horse show (C. Breland at 9-11, 22). As he was traveling north on Highway 183 in or near Uniontown, Alabama, Caleb Breland noticed the awning separate from the trailer and spring out into the southbound lane of Highway 183 (C. Breland at 9-11, 22). At or about that moment, Mr. Breland observed the van driven by Mr. Bassett traveling south and located approximately at his front bumper (C. Breland at 34-36). The awning struck the Bassett vehicle, causing the cylinder on which the fabric of the awning was rolled up to be

dislodged from the awning assembly system (C. Breland at 38-43). Mr. Breland, unable to pull off the road at the scene of the accident, drove to a friend's house just north of the accident site and, using his friend's truck, returned to the scene of the accident to check on the driver of the other vehicle (C. Breland at 40-43). The awning cylinder struck the Bassett vehicle and Mr. Bassett as well, causing his death.

As a result of the death of Mr. Bassett, the above-referenced lawsuit was filed pursuant to Alabama's Wrongful Death Statute.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## DISCUSSION

The Plaintiff's First Amended Complaint, in particular its claims against Hart, appear to arise out of the mistaken belief that Hart had some involvement in the design, manufacture, sale, or installation of the awning assembly system which failed and caused Mr. Bassett's death.  The evidence establishes conclusively that Hart was not in any way involved in the design and manufacture of the awning or awning assembly system; was not in any way involved in the purchase or sale of the awning to be installed on the subject vehicle; was not in any way involved in the installation or manner in which the awning was installed on the trailer; was not in any way involved in any inspection of the installation to determine whether or not the installation was properly performed; was not involved in making any recommendations with respect to the use, selection, or installation of the

awning installed on the trailer after it left the control of Hart; and did not have any knowledge that the trailer sold to DCL had been sent by DCL to Outlaw Conversions for the installation of an awning and awning assembly system.

The essence of the Plaintiff's claim, based primarily upon the testimony of Caleb Breland, is that the awning assembly system, in particular the locking devices and latches which hold the awning in a closed position, failed or broke as the vehicle was traveling north on Highway 183, causing the awning to spring away from the trailer and strike Mr. Bassett. The alleged defective product is not the trailer shell made by Hart but the awning and awning assembly system, including locks and latches, installed on the shell after the trailer left the custody and control of Hart.

Count One of the First Amended Complaint alleges that Hart violated the Alabama Extended Manufacturer's Liability Doctrine by placing into the stream of commerce an awning and awning assembly system which was defective and unreasonably dangerous. To prove a claim under the Alabama Extended Manufacturer's Liability Doctrine the Plaintiff must prove:

    (1)    A plaintiff must prove <u>he suffered injury or damages to himself or his property by one who sold a product in a defective condition</u> unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

        (a)    the seller was engaged in the business of selling such a product, and

        (b)    <u>it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold</u>.

    (2)    Having established the above elements, the plaintiff has proved a prima facie case although

      (a)    the seller had exercised all possible care in the preparation and sale of his product, and

      (b)    the user or consumer had not bought the product from, or entered into any contractual relation with, the seller.

(Emphasis added.)
(<u>Atkins v. American Motors Corp.</u>, 335 So.2d 134, 141 (Ala.1976).

Courts interpreting the AEMLD have established defenses that can be raised to such claims when made by plaintiffs. In <u>Casrell v. Altec Ind., Inc.</u>, 335 So.2d 128, 134 (Ala.1976), the Court wrote:

> What defenses are available to defendants, ask Altec and Mobile. Ordinarily, defenses fall into two categories: (1) general denial, and (2) affirmative defenses.
>
> Under the general denial defense, the defendant may offer evidence to counter plaintiff's prima facie case. For example, where plaintiff's evidence infers that the product was defective when it left the manufacturer's control and possession, <u>the manufacturer can rebut this evidence, proving the defect, if any, occurred while in the possession or control of the distributor or retailer. Moreover, the defendant may affirmatively show that it did not contribute to the defective condition, had no knowledge of it, and had no opportunity to inspect the product. In other words, there was no causal relation in fact between his activities in handling the product, and its defective condition</u>. But this 'lack of causal' relation defense is not to be understood as being available to a manufacturer, where the defect is in a component part, or to a defendant who distributes a product under its trade name. Sears, Roebuck & Co. The defendant may assert the negligent conduct of the plaintiff in using the product, as well as the defense of assumption of risk.
> (Emphasis added.)

In addition, courts have consistently recognized that an essential element of the plaintiff's claim is proof that the alleged defect proximately cause the plaintiff's injury or

8.

damage. In <u>Banner Welders, Inc. v. Knighton</u>, 425 So.2d 441, 451 (Ala.1982), the Court, dealing with a subsequent modification of the product stated:

> Proximate cause is an element of a products liability action. A plaintiff must prove that his injury resulted from the defective condition of the product. <u>Casrell v. Altec Industries, Inc.</u>, at 133. One commentator has observed:
>
> <u>The question of liability of a manufacturer or seller for injuries sustained by the user of an altered product involves the issue of whether the injuries were proximately caused by a defect in the product as manufactured and sold, or by a defect created by the alteration by the user or a third party</u>.
> (Emphasis added.)

Alabama law recognizes that it would be unfair to hold the manufacturer of a product liable for alleged defects that were created when modifications and/or changes were made after the product left the manufacturer's care and control (see <u>Johnson v. Niagara Machine & Tool Works</u>, 555 So.2d 88 (Ala.1989)). That is precisely what occurred in this instance. And, as a result, the Plaintiff's claim brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine is due to be dismissed.

The negligence and wantonness claims basically assert the same claim as that made under the AEMLD. Essentially, the Plaintiff alleges that the Defendant was negligent and/or wanton in the design, manufacture, installation, or inspection of the awning system applied to the trailer. In addition, because the Plaintiff is under the misapprehension that Hart was involved in the sale and distribution of the awning and the awning assembly system and had an opportunity to inspect its installation, she alleges Hart had a duty to warn of the alleged defective condition of the product, specifically the potential for failure of the locking devices or latches which held the awning in the closed position. Two essential elements of a negligence and/or wanton claim are the existence of a duty and

9.

proximate causation.  In this case, the evidence clearly establishes that Hart did not owe any duty to its purchaser or any third party with respect to the manufacture, design, or installation of the awning in question.  Nor is there any evidence that any act or omission of Hart proximately caused the death of Mr. Bassett.  In short, as with the AEMLD, there is a complete failure of proof with respect to the involvement of Hart in the design, manufacture, installation, or inspection of the awning and awning assembly system installed on the trailer after it left the control and custody of Hart.  For those reasons, the negligence and wantonness claims are due to be dismissed and summary judgment granted in its favor.

WHEREFORE, the premises considered, Hart respectfully requests the Court enter summary judgment in its favor on all claims by Plaintiff in her First Amended Complaint.


/s/ Dennis McKenna
DENNIS McKENNA (MCKED3744)


/s/ J. Ritchie M. Prince
J. RITCHIE M. PRINCE (PRINJ1903)
Attorneys for Hart Manufacturing, Inc.
Prince, McKean, McKenna & Broughton, L.L.C.
P.O. Box 2866
Mobile, AL 36652
Phone:  251-433-5441
Fax:     251-431-0159
E-Mail:  dm@princemckean.com
          rp@princemckean.com

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this the 10th day of August, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

D. Michael Andrews, Esq.
Michael J. Crow, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103

Gerald Swann, Jr., Esq.
Ball, Ball, Matthews & Novak, P.A.
P. O. Box 2148
Montgomery, AL 36102

S. Anthony Higgins, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson
P. O. Box 4128
Montgomery, AL 36103

Robert A. Huffaker, Esq.
R. Austin Huffaker, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery, AL 36101

Brian Taggart Mosholder, Esq.
Carpenter, Prater, Ingram & Mosholder, LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106

Harlan I. Prater, IV, Esq.
Kevin E. Clark, Esq.
Mitchell D. Greggs, Esq.
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203

                                        /s/ Dennis McKenna
                                        DENNIS McKENNA

DPM\LM\BASSETT\Pleadings.USDC\Brief.Mo.Sum.JUDG.8.9.06