**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| ROSALYN BASSETT, As the | * | |
| Administratrix and Personal | * | |
| Representative of the Estate of | * | |
| TERRY BASSETT, SR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NUMBER: 2:05cv1183-MEF |
| | * | |
| KENNETH BRELAND, et al., | * | |
| | * | |
| Defendants. | * | |

**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT
IN SUPPORT OF DEFENDANT HART MANUFACTURING, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Simultaneously with the filing of this proposed findings of fact and conclusions of Law, the Defendant, Hart Manufacturing, Inc., d/b/a Hart Trailers, has filed a motion for summary judgment with respect to all claims made by the Plaintiff in her First Amended Complaint.  In support of that motion, Defendant proposes the following:

**I.  PLAINTIFF'S CLAIMS AND PROCEDURAL BACKGROUND**

1.      The above-referenced lawsuit arises out of a fatal automobile accident occurring on or about March 11, 2005 on Highway 183 in or near Uniontown, Alabama and involving a van driven by the Plaintiff's decedent, Terry Bassett, Sr., and a truck and horse trailer driven by Defendant Kenneth Caleb Breland (Plaintiff's First Amended Complaint, Paragraphs 5-9).

2.      The Plaintiff filed suit against Kenneth Caleb Breland and Geico Insurance Company in the United States District Court for the Middle District of Alabama, Northern Division, on December 13, 2005 (Plaintiff's Complaint).  On May 1, 2006, Plaintiff filed an amended complaint adding, for the first time, Hart Manufacturing, Inc., d/b/a Hart Trailers (Plaintiff's First Amended Complaint).  The amended complaint alleges in three counts the following causes of action against Hart Manufacturing, Inc.:

      a.      <u>Violation of the Alabama Extended Manufacturer's Liability Doctrine</u>: Plaintiff alleges that Hart designed, manufactured, built, assembled, inspected, sold, and distributed a horse trailer with an awning attached which was defective and unreasonably dangerous at the time of its sale (Count One).  Plaintiff alleges that Hart, among others, failed to include necessary safety precautions and guards in their design and that safety devices on the trailer/awning were not adequate or designed to meet industry standards.

      b.      <u>Negligence</u>:  Plaintiff alleges that Hart was negligent in the design, manufacture, building, assembly, inspection, sale, and distribution of a horse trailer with awning assembly (Count Two).  Plaintiff alleges that Hart negligently failed to warn of the alleged defect in the design or safety features of the awning.

      c.      <u>Wantonness</u>:  Plaintiff alleges that the Defendant Hart wantonly designed, manufactured, built, assembled, inspected, sold, and/or distributed a horse trailer with a defective awning assembly (Count

Three).  Plaintiff makes claims that Hart wantonly failed to warn of the alleged defect.

3.     Defendant Hart filed an answer to the Plaintiff's First Amended Complaint denying the material allegations of that complaint and asserting therein additional defenses (Answer of Hart to First Amended Complaint).

4.     Plaintiff's complaint alleges that on March 11, 2005, Defendant Kenneth Caleb Breland was hauling a horse trailer outfitted with an awning north on Highway 183 in or near Uniontown, Alabama (Paragraphs 6,7).  The trailer was fitted with an awning attached to the driver's side of the trailer (Paragraph 7).  As the vehicle being driven by Plaintiff's decedent, Terry Bassett, approached the Breland vehicle from the north, Plaintiff alleges in Paragraphs 8 and 9 of her complaint that the locking device on the awning opened, causing the awning to spring open and to enter into the southbound lane of Highway 183.  The awning assembly struck the vehicle driven by Terry Bassett, Sr., broke through the windshield on the driver's side of his car, and struck Mr. Bassett, causing his death.

5.     The pertinent parties to this action are:

    a.     <u>Rosalyn Bassett</u>:  The personal representative of the deceased Terry Bassett, Sr. (Plaintiff's First Amended Complaint, Paragraph 1).

    b.     <u>Kenneth Caleb Breland</u>:  Mr. Breland is part owner of the horse trailer with the awning attached to it involved in the Bassett accident and was the operator of the pickup truck that was hauling the trailer at the time the accident occurred (Caleb Breland Deposition @ 2, 23, 24).

3.

    c.    <u>Dometic Corporation</u>:    Dometic Corporation is the entity that manufactured the A&E two-step awning and awning assembly system on the trailer involved in the Bassett accident (See Outlaw Conversions Disclosures).

    d.    <u>Outlaw Conversions, LP</u>:  Outlaw Conversations, LP is the entity that installed the A&E two-step awning and awning assembly system on the horse trailer involved in the Bassett accident (See Outlaw Conversions Disclosures).

    e.    <u>Hart Manufacturing, Inc., d/b/a Hart Trailers</u>:  Hart is the entity that manufactured the horse trailer to which the awning and awning assembly package were later installed and attached (See Affidavit of Kay Hart).

6.    Hart is a manufacturer of horse trailers with its principal place of business in Chickasha, Oklahoma (Hart Affidavit).

7.    It sells horse trailers through a network of dealers located in several states within the United States (Hart Affidavit).

8.    At the time of the initial sale of the horse trailer involved in the Bassett accident in October, 2001, one of the dealers to whom Hart sold horse trailers was DCL Trailers of Philadelphia, Mississippi (Hart Affidavit).  The dealer principal of DCL Trailers was Dr. H. Duane Stokes, a Philadelphia, Mississippi veterinarian (Hart Affidavit).

9.    On October 16, 2001, Hart sold the horse trailer involved in the Bassett accident to DCL Trailers, its dealer located in Philadelphia, Mississippi (Hart Affidavit; Exhibit A).

10.    Exhibit A to the Affidavit of Kay Hart is a true and correct copy of the invoice and related sales documentation for the sale of the trailer involved in the Bassett accident (more specifically identified as an aluminum four-horse trailer, Serial Number 1H93H232221051035) (Hart Affidavit).

11.    At the time of the sale of the trailer involved in the Bassett accident from Hart to DCL Trailers in October of 2001, the trailer did not have an awning attached to it nor was the trailer specially designed or manufactured in any way to accommodate the subsequent installation of an awning or awning assembly (Hart Affidavit).

12.    Hart was not in any way involved in any of the following acts or activities:

    a.    Modifying the trailer in any way to accommodate the installation of an awning or awning assembly system manufactured by Dometic Corporation.

    b.    The decision to install an awning on the subject trailer.

    c.    The selection of a person or entity to install an awning or awning assembly on the subject horse trailer.

    d.    The selection of an awning manufacturer, awning product, or awning assembly system to be installed on the subject trailer.

    e.    The recommendation of an awning, its installation, or the use of an awning on the subject trailer.

    f.    The design, manufacture, assembly, inspection, sale, or distribution of any awning product or awning assembly system installed or attached to the subject trailer.

5.

   g.  Any inspections of the awning and awning assembly system after it

      was installed on the trailer or the manner of installation.

  (Hart Affidavit.)

   13.  At the time of the sale of the horse trailer from Hart to DCL Trailers, the trailer was not outfitted with an awning or any part of an awning assembly system or package, including locking devices and latches (Hart Affidavit).

   14.  At no time was Hart made aware that the trailer sold to DCL Trailers in October of 2001 was thereafter modified by the addition of an awning and awning assembly system.

   15.  The awning and awning assembly system, including locking devices and latches, were added to the trailer after it left the control, possession, and custody of Hart (Hart Affidavit).

   16.  Hart had no knowledge of, nor involvement in, the modification of the subject trailer, including the making of recommendations relating to awnings or awning assembly systems, the modification of the subject trailer, or the decision to add and install an awning and awning assembly system on the trailer, including locking devices and latches or the manner or method by which the awning was attached (Hart Affidavit).

   17.  At no time did Hart have any communications with DCL Trailers, Dometic Corporation, or Outlaw Conversions concerning the addition of an awning to the trailer sold to DCL Trailers (Hart Affidavit).

   18.  Hart did not at any time enter into any agreement or contract with DCL Trailers, Outlaw Conversions, or Dometic for the purchase and installation of an awning

and awning assembly system for the trailer sold in October, 2001 to DCL Trailers (Hart Affidavit).

19.     The awning was installed on the trailer by Outlaw Conversions (Deposition of Nowell @ 16, 21, 22; Outlaw Conversions' Initial Disclosures).

20.     The awning was ordered by and installed on the trailer at the request of DCL Trailers (Outlaw Conversions' Initial Disclosures).

21.     The Outlaw Conversions purchase order notes that DCL Trailers, on or after October 31, 2001, ordered substantial modifications to the Hart Trailer, including the addition and installation of an A&E two-step awning.  The awning was installed on Hart Trailer, Serial Number 1H93H232221051035 (Outlaw Conversions' Initial Disclosures).

22     On March 6, 2002,Outlaw Conversions sent an invoice to DCL Trailers in the net amount of $11,215.40 for the modifications made to the trailer at its request, including the A&E two-step awning (Outlaw Conversions' Initial Disclosures).

23.     On March 7, 2002, DCL Trailers, by check, paid Outlaw Conversions for the modifications made to the trailer, including the installation of the awning (Outlaw Conversions' Initial Disclosures).

24.     The new trailer, with the awning then attached, was sold by Dr. Stokes (DCL Trailers) to Don Nowell in 2002 (Deposition of Don Nowell @ 9, 10).

25.     In February, 2005, the trailer was sold by Don Nowell to Caleb Breland and his brother Jacob (Deposition of C. Breland @ 24; Exhibit 1 to C. Breland Deposition).

26.     During the time in which both Nowell and the Brelands owned the trailer, each denies ever operating or in any way opening the awning attached to the trailer (C. Breland @ 36; Nowell Deposition at 12).

7.

27.     At approximately noon on March 11, 2005, Jacob and Caleb Breland left their home in Philadelphia, Mississippi in route to a horse show in Alabama the next day. (C. Breland @ 9-11, 22).

28.     Caleb Breland was driving a pickup truck and hauling a loaded horse trailer, the same trailer purchased from Nowell (C. Breland @ 9-12, 19).

29.   As Caleb Breland was driving north on Highway 183 in or near Uniontown, Alabama, he noticed the front of the awning separate from the trailer, causing the awning to spring open and fall away from the driver's side of the trailer and into the southbound lane of Highway 183 (C. Breland @ 33-39).

30.     At or about the same time as Caleb Breland saw the awning open and separate from the trailer, he observed a vehicle driven by Terry Bassett, Sr. approaching from the north and located across from his front bumper (C. Breland @ 34-36).

31.     Caleb Breland testified that he was unable to pull off the right-hand side of Highway 183 at or about the place where the accident occurred because of the presence of a steep incline leading to a ditch located on the right-hand side of the roadway (C. Breland @ 41-42).

32.     As the Bassett vehicle and Breland truck passed each other, the awning or a portion of the awning assembly struck the Bassett vehicle (C. Breland @ 38-43).

33.     Unable to stop on the roadway after the collision, Caleb Breland drove to an acquaintance's home just north of the accident site and then returned to the scene of the accident in a different vehicle (C. Breland @ 40-43).

34.     Caleb Breland inspected the awning assembly still attached to the trailer and determined that the locking device or latch had broken (C. Breland @ 63, 64).

8.

35.    Mr. Bassett died as a result of injuries received during the automobile accident.

36.    In response to interrogatories asking Plaintiff to detail the nature of the alleged defect and the Plaintiff's contention of how the accident occurred, the Plaintiff responded:

> While the trailer was on the roadway, the awning detached, opened, broke or otherwise failed and fell away from the side of the trailer.  As a result, the end of the awning crashed through the windshield of my husband's vehicle and struck him in the head, and killed him.  I don't know all of the defects that caused the awning to fall away from the trailer and kill my husband.
> (Plaintiff's interrogatory responses.)

## II.  PROPOSED CONCLUSIONS OF LAW

1.    Count One of the First Amended Complaint alleges a claim against Hart arising under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD).  Under the AEMLD, to establish liability:

> (1)    A plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
>
>    (a)    the seller was engaged in the business of selling such a product, and
>
>    (b)    it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.
>
> (2)    Having established the above elements, the plaintiff has proved a prima facie case although
>
>    (a)    the seller had exercised all possible care in the preparation and sale of his product, and

> > (b)    the user or consumer had not bought the product
> > from, or entered into any contractual relation
> > with, the seller.
>
> (Emphasis added.)
> (Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976).

Courts interpreting the AEMLD have established defenses that can be raised

to such claims when made by plaintiffs.  In Casrell v. Altec Ind., Inc., 335 So.2d 128, 134

(Ala.1976), the Court wrote:

> What defenses are available to defendants, ask Altec and
> Mobile.   Ordinarily, defenses fall into two categories:
> (1) general denial, and (2) affirmative defenses.
>
> Under the general denial defense, the defendant may offer
> evidence to counter plaintiff's prima facie case.  For example,
> where plaintiff's evidence infers that the product was defective
> when it left the manufacturer's control and possession, the
> manufacturer can rebut this evidence, proving the defect, if
> any, occurred while in the possession or control of the
> distributor or retailer.   Moreover, the defendant may
> affirmatively show that it did not contribute to the defective
> condition, had no knowledge of it, and had no opportunity to
> inspect the product.  In other words, there was no causal
> relation in fact between his activities in handling the product,
> and its defective condition.  But this 'lack of causal' relation
> defense is not to be understood as being available to a
> manufacturer, where the defect is in a component part, or to a
> defendant who distributes a product under its trade name.
> Sears, Roebuck & Co.   The defendant may assert the
> negligent conduct of the plaintiff in using the product, as well as
> the defense of assumption of risk.
> (Emphasis added.)

In addition, courts have consistently recognized that an essential element of

the plaintiff's claim is proof that the alleged defect proximately cause the plaintiff's injury or

damage.  In Banner Welders, Inc. v. Knighton, 425 So.2d 441, 451 (Ala.1982), the Court,

dealing with a subsequent modification of the product stated:

10.

Proximate cause is an element of a products liability action. A plaintiff must prove that his injury resulted from the defective condition of the product. Casrell v. Altec Industries, Inc., at 133. One commentator has observed:

The question of liability of a manufacturer or seller for injuries sustained by the user of an altered product involves the issue of whether the injuries were proximately caused by a defect in the product as manufactured and sold, or by a defect created by the alteration by the user or a third party.
(Emphasis added.)

In Johnson v. Niagrara Machine and Tool Works, 555 So.2d 88, 91

(Ala.1989), the Court stated:

. . . , we note that a defendant may defeat a plaintiff's claim by showing that the defect, if there was one, "occurred while the product was [in] the possession or control of the distributor or retailer." Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976).

* * *

It is clear that in Alabama the mere fact that a product has been modified by the buyer subsequent to the sale does not always relieve a manufacturer of liability. In Industrial Chemical v. Hartford Acc. & Indem. Co., 475 So.2d 472 (1985), we stated:

It is fair to hold the manufacturer (and its insurer) liable for bodily injury caused by a defect in the product, even though the product has been changed, if the injury was not caused by the change.

It is equally fair to hold the manufacturer or its carrier liable for bodily injury caused by a defect in the product, even though the product is undergoing demonstration, installation, servicing, or repair, if these activities did not cause the injury."

11.

Here the evidence is without dispute.  Plaintiff contends that the awning, principally the locking devices on the awning assembly, was defectively designed and manufactured.  There is no evidence that the trailer itself was defective.  The evidence is uncontroverted that Hart was not in any way involved in the design, manufacture, or installation of the awning, nor did it inspect the installation when completed, and, as a result, cannot be liable to Plaintiff under the AEMLD.  Furthermore, the evidence establishes conclusively that Hart's activities did not in any way cause or contribute to the existence of the alleged defect or the unfortunate death of Mr. Bassett.  Hart's motion for summary judgment is due to be granted on Count One brought pursuant to the AEMLD.

2.     Plaintiff's negligence and wantonness counts, Counts Two and Three of the First Amended Complaint, are also due to be dismissed.  To establish negligence or wantonness, the Plaintiff must prove the existence of a duty to Plaintiff, along with a failure to discharge or perform that legal duty which proximately causes injury to Plaintiff.  Wallace v. Alabama Power Co., 479 So.2d 450 (Ala.1986).  There is no evidence that Hart owed a duty to Plaintiff with respect to the design, manufacture, installation, inspection, sale, or distribution of the awning, nor that it at any time assumed such a duty.  In addition, there is no evidence that Hart's conduct and activities proximately caused Mr. Bassett's death.  For those reasons, summary judgment on Plaintiff's negligence and wantonness claims is due to be granted.

12.

## **JUDGMENT**

Summary judgment is due to be and hereby is granted in favor of the Defendant Hart

Manufacturing, Inc., d/b/a Hart Trailers, on all claims.  Costs will be taxed against Plaintiff.

A separate Final Judgment will be entered.


DONE this _____ day of _____, 2006.


_____
DISTRICT JUDGE




/s/ Dennis McKenna_____
DENNIS McKENNA (MCKED3744)


/s/ J. Ritchie M. Prince_____
J. RITCHIE M. PRINCE (PRINJ1903)

Attorneys for Hart Manufacturing, Inc.
Prince, McKean, McKenna & Broughton, L.L.C.
P.O. Box 2866
Mobile, AL 36652
Phone:  251-433-5441
Fax:     251-431-0159
E-Mail:  dm@princemckean.com
            rp@princemckean.com


13.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 10th day of August, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

D. Michael Andrews, Esq.
Michael J. Crow, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103

Gerald Swann, Jr., Esq.
Ball, Ball, Matthews & Novak, P.A.
P. O. Box 2148
Montgomery, AL 36102

S. Anthony Higgins, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson
P. O. Box 4128
Montgomery, AL 36103

Robert A. Huffaker, Esq.
R. Austin Huffaker, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery, AL 36101

Brian Taggart Mosholder, Esq.
Carpenter, Prater, Ingram & Mosholder, LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106

Harlan I. Prater, IV, Esq.
Kevin E. Clark, Esq.
Mitchell D. Greggs, Esq.
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203

/s/ Dennis McKenna
DENNIS McKENNA

DPM\LM\BASSETT.v.Breland\Pleadings.USDC\
Proposed Findings.Fact.Conclusions.Support.Mo.Sum.Judg.8.9.06