IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| ROSALYN BASSETT, as the Administratrix and Personal Representative of the Estate of TERRY BASSETT, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH BRELAND, GEICO CASUALTY COMPANY, HART MANUFACTURING, INC. d/b/a HART TRAILERS, OUTLAW CONVERSIONS, LP, AND DOMETIC CORPORATION,<br><br>Defendants. | *<br>*<br>*<br>*<br>*  **CASE NO.: 2:05cv1183-MEF**<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**PLAINTIFF ROSALYN BASSETT'S RESPONSE IN OPPOSITION TO DEFENDANT HART MANUFACTURING, INC'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Rosalyn Bassett, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files her opposition to the Motion for Summary Judgment of Defendant Hart Manufacturing, Inc., d/b/a Hart Trailers (hereinafter referred to as "Hart"). Hart's motion is due to be denied because, as will be evident, Hart owed Terry Bassett a legal duty under Alabama law and, therefore, Hart is not entitled to a judgment as a matter of law. In opposition to this motion, the Plaintiff relies upon the following exhibits:

1.  Accident Report.

2.  Deposition excerpts of Donald Shepard.

3.  Deposition excerpts of Albert Turner.

1

4. Deposition excerpts of Caleb Breland.

5. Letters of Administration.

6. Outlaw Conversions Disclosures.

7. Karen "Kay" Hart Affidavit.

8. Plaintiff's Complaint.

9. Plaintiff's Amended Complaint.

10. Plaintiff's First Request for Production to Hart Manufacturing, Inc.

11. Plaintiff's Amended Notice of Deposition

12. Deposition excerpts of Karen Hart.

13. Dealer Policy.

14. Deposition excerpts of Dale Mallot.  (This deposition was taken on May 9, 2007 and the transcript is not available at this time.  The Plaintiff will supplement its brief and exhibits with the deposition excerpts upon receipt thereof.)

In further opposition to Hart's motion, the Plaintiff shows the Court as follows:

## I.   FACTS

1. On March 11, 2005, Terry Bassett was driving his van south on Alabama Highway 183 at or near the city limits of Uniontown, Alabama.  (Accident Report; Shepard at 28; Turner at 43-44)

2. On the same date and time, Defendant Breland was driving his pick-up truck with a horse trailer attached to it, north on Alabama Highway 183.  (C. Breland at 9-11,22 )

3. At some time prior to meeting Mr. Bassett's vehicle, the awning which was attached to the Defendant's horse trailer, became unattached on one end.  (C. Breland at 34-40)

4. The end of the awning that became unattached was suspended in mid-air into the southbound lane of Alabama Highway 183.  (C. Breland at 33-40)

5. The suspended awning from Defendant Breland's horse trailer struck and killed Terry Bassett as he operated his van.  (C. Breland at 38-43)

6. Plaintiff Rosalyn Bassett is the Administratrix and personal representative of the estate of Terry Bassett, Sr.  (See Letters of Administration)

7. Defendant Kenneth Breland was operating the pickup truck that was hauling the trailer at the time of the subject accident.  (C. Breland at 9-11)

8. Defendant Dometic is the entity that manufactured the A&E two-step awning assembly system on the subject trailer.  (See Outlaw Conversions Disclosures)

9. Defendant Outlaw Conversions is the entity that installed the A&E two-step awning assembly system on the subject trailer.  (See Outlaw Conversions Disclosures)

10. Defendant Hart Trailers designed and manufactured the subject horse trailer.  (See Outlaw Conversions Disclosures)

11. DCL Trailers of Philadelphia Mississippi, who sold the subject trailer, was one of Hart's dealers at the time of the sale.  (Hart Affidavit).

## II.    PROCEDURAL HISTORY

1. The subject accident occurred on March 11, 2005. (See Plaintiff's Complaint).

2. Plaintiff filed suit against Defendants Breland and Geico Insurance Company in the United States District Court for the Middle District of Alabama, Northern Division, on December 13, 2005. (See Plaintiff's Complaint).

3. On May 1, 2006, Plaintiff amended her complaint adding Defendants Hart, Dometic, and Outlaw along with claims against each for AEMLD, Negligence and Wantonness. (See Plaintiff's Amended Complaint).

4. On February 14, 2007 Plaintiff filed her First Request for Production to Hart Manufacturing, Inc. (See Plaintiff's First Request for Production to Hart Manufacturing, Inc.).

5. On April 12, 2007 Plaintiff filed her amended notice of deposition of Karen K. Hart. (See Plaintiff's Amended Notice of Deposition).

6. Defendant Hart put up Karen K. Hart as its corporate representative on April 17, 2007 in Chickasha, Oklahoma. (Hart Deposition dated April 17, 2007).

7. At her deposition, Ms. Hart demonstrated a marked lack of knowledge regarding Hart's products and an inability to answer Plaintiff's counsel's questions regarding the subject trailer:

```
18     Q.  What's the average cost of a Hart trailer?
19     A.  I don't know that.
20     Q.  So you can't give us an idea of how many
21   trailers that would be?
22     A.  No, I can't.
23     Q.  Earlier you said when a dealer applies --
24   when a prospective dealer applies to Hart, the sales
25   staff considers geographic population concerns as well
```

4

```
0015
 1  as the physical location of the prospective dealer.
 2  What, if anything, was done to check out the dealer
 3  location for DCL Trailers?
 4     A.  I don't know.
 5     Q.  Is that something that you've looked at
 6  to -- to be prepared for today?
 7     A.  No.
```
(Hart Page 15, line 18 – page 16, line 7) (Emphasis Added)

```
22     Q.  Do you know what facility DCL Trailers has
23  to sell Hart trailers?
24     A.  No.
25     Q.  Do you know if anybody ever went out and
0017
 1  took a look at their operation to see if they were
 2  equipped to sell trailers?
 3     A.  I don't recall.
 4     Q.  Is there any sort of background check to
 5  make sure the person selling a Hart trailer is -- is
 6  in any way qualified to sell that trailer?
 7     A.  No.
```
(Hart Page 16, line 22 – page 17, line 7) (Emphasis Added)

```
 8     Q.  Did Hart co-op with DCL Trailers for
 9  advertising of DC -- of Hart products?
10     A.  I don't recall.
11     Q.  How would we go about finding that out?
12     A.  I don't know.
13     Q.  Well, do you know if DCL attended any trade
14  shows during the period of time that it was a Hart
15  dealer?
16     A.  I don't recall.
17     Q.  Is there any way for us to find that out?
18     A.  I don't know of any way.
```
(Hart Page 29, lines 8-18) (Emphasis Added)

**11     Q.  <u>Are there any restrictions contained in the</u>**
**12  <u>Hart dealer agreement that prevent a dealer from</u>**
**13  <u>modifying a Hart trailer?</u>**
**14     A.  <u>I don't recall.</u>**
 **(Hart Page 30, lines 11-14)(Emphasis Added)**

```
25     Q.  (BY MR. ANDREWS)  Okay.  Now, going back to
0041
```

```
 1  what you were just saying, when the dealer signs up to
 2  be a dealer, they have an option of choosing who they
 3  want to be their up-fitter?
 4     A.  Yes.
 5     Q.  All right.  So when DCL became a dealer for
 6  Hart, did it write in somewhere, I want to use Outlaw?
 7  Or was there a checklist?  Or how does that work?
 8     A.  I don't know.
 9     Q.  Well, how do they go about choosing?  You
10  said they choose the up-fitter.  How do they choose?
11     A.  I don't know that process.
```
(Hart Page 41, line 25 – page 42, line 11) (Emphasis Added)

```
18     Q.  Who does the engineering work on Hart
19  trailers?
20     A.  I don't know.
21     Q.  Is that something that's done in-house or do
22  you contract that out or --
23     A.  I don't know what engineering is required.
24     Q.  All right.  Well, who would know that?
25     A.  Anthony would know that.
0054
 1     Q.  I think a lot of my questions might be
 2  better directed to someone else.  Let me just ask you
 3  this:  Are Hart trailers sometimes manufactured with
 4  the stall doors on the right-hand side as opposed to
 5  the left-hand side?
 6     A.  I don't know.
 7     Q.  You don't know that?
 8     A.  No.
 9     Q.  Have you ever seen Hart trailers with the
10  doors on the driver's side and then maybe the doors
11  might be on the passenger side on another one?
12     A.  I don't know.  If I have seen the doors, I'm
13  not -- I don't remember where the doors are.
14     Q.  So you -- you can't tell me which side Hart
15  puts the doors as a sort of a standard configuration?
16     A.  No.
```
(Hart Page 54, line 18 – page 55, line 16) (Emphasis Added)

    8.  Hart toured the Outlaw facilities, knows the owners and saw Outlaw up-fitting its trailers.

```
12     Q.  Have you ever been down to Outlaw
13  Conversions?
```

6

```
14     A.  Yes, I have.
15     Q.  When did you go to Outlaw?
16     A.  Approximately four years ago.
17     Q.  For what reason did you go to Outlaw?
18     A.  We were in the vicinity and went by to
19  visit.
20     Q.  When you say "we" --
21     A.  My husband and I.
22     Q.  All right.  And tell me what you did at
23  Outlaw.
24     A.  We visited with John and Russ and he took us
25  on a tour of his facility.
0036
 1     Q.  All right.  Did you see stages of -- various
 2  stages of conversions going on to Hart trailers?
 3     A.  Yes.
 4     Q.  In other words, they had trailers there they
 5  were working on?
 6     A.  Yes.
```
(Hart Page 36, line 19 – page 37, line 6) (Emphasis Added)

### III.    SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and…the moving party is entitled to summary judgment as a matter of law."  Once the party seeking summary judgment has informed the Court of the basis of its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); see also Fitzpatrick v. City of Atlanta, 2 F. 3d 1112, 1115-17 (11th Cir. 1993) (discussing how the responsibilities on the movant vary depending on whether the pertinent legal issues are ones for which the movant or non-movant bears the burden of proof at trial).  In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the

nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

## IV.   LEGAL ANALYSIS AND ARGUMENT

Defendant Hart alleges that there are no genuine issues of material fact and that it is entitled to summary judgment on the counts of AEMLD, Negligence and Wantonness.  Hart makes the argument that its actions did not in any way contribute to the unfortunate death of Mr. Bassett.  However, the evidence and Hart's own Dealer Policy establish Hart's legal duty in this case through Respondeat Superior.

### A.   Hart Exercised Sufficient Control Over DCL to Establish Liability Through Respondeat Superior.

"To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of …master and servant." Horn v. Fadal Machining Centers, LLC, 2007 WL 431427, (Ala. Feb 09, 2007) (citing Hendley v. Springhill Mem'l Hosp., 575 So.2d 547, 550 (Ala.1990).  "Proof of a master and servant relationship is tested by the degree of control the alleged master retains over the alleged servant." Id.  Hart's dealer policy sets out the extent and degree of control it has over the servant dealer DCL.

- Under Section 2, Hart mandates the number of trailers that must be on display or order at all times.  (See Dealer Policy).

- Section 3 requires suitable premises for display and service as agreed upon between Hart and the dealer.  (See Dealer Policy).

- Section 11 requires that dealers adhere to all federal, state and local safety and regulatory laws. … Dealers are to cooperate fully with respect to matters pertaining to product safety, product liability.  (See Dealer Policy).

- Section 19 requires the dealer to read and understand the Manufacturer's Warranty, inspect each trailer and instruct each purchaser on the operations, maintenance and upkeep of the trailer.  (See Dealer Policy).

- Section 19 further provides that all problems are considered to be warranty claims **only** until authorized by Hart and or component supplier. (See Dealer Policy).

- Section 24 provides for monetary sanctions of the dealer for violations of the policy. Any Dealer violations may cause appropriate action to be taken, including but not limited to loss of up to 5% of dealers discount structure, for up to one year from date of infraction.  (See Dealer Policy).

Ware v. Timmons, 2006 WL 1195870, (Ala. May 05, 2006), requires that the master have the right to choose, select or dismiss its servant and that the master must have voluntarily entered into the master-servant relationship.  Here, the dealer policy unquestionably establishes that Hart is master of its servant dealers.  Hart could choose, select or even dismiss DCL.  DCL voluntarily entered into the agreement.  Further, the agreement allows Hart to maintain control of DCL's actions.  The facts are clear that defendant Hart exercised sufficient control over its dealers to establish liability through respondeat

9

superior. "Vicarious liability stemming from a master-servant relationship-respondeat superior liability-is usually a question of fact for the jury." Id.

As Section 11 provides, Hart requires that its dealers comply with all federal, state and local safety and regulatory laws. Hart's dealer servant, DCL, chose to have an awning attached to the driver's side of the subject trailer. Discovery is ongoing, but Dometic corporate representative Dale Mallott testified that the possibility of awnings billowing or detaching/deploying from the side of a vehicle has been "common knowledge" at Dometic for years. (See Mallott Deposition pages to be substituted upon receipt of transcript). Because DCL is Hart's agent, and because DCL chose to outfit the subject trailer with an awning affixed to the driver's side, Hart is liable for the actions of its agent DCL. Hart knew its dealers were up-fitting its trailers. Hart had a responsibility to ensure that its up-fittings were safe. Hart should have provided instructions to its dealers, like DCL, about the dangers of up-fitting and installing an awning on the driver's side of a Hart trailer. Hart knew or should have known that such conduct could be dangerous. Further, Hart's dealer DCL sold the trailer in its finished condition complete with the subject awning attached to the driver side. Thus, summary judgment is not proper at this time.

### B. Hart Owed a Duty to Warn.

Plaintiff has claims against Defendant Hart for negligent and wanton conduct. Hart negligently and wantonly designed, manufactured, built, assembled, inspected, and sold or distributed the subject horse trailer and subject awning in a defective or unreasonably dangerous condition and knew or should have known

10

that failing to design a reasonably safe product could result in severe injury or death to the Plaintiff. Hart negligently and wantonly failed to warn or instruct its dealers of the potential hazards associated with the up-fitting of its trailer with awnings. Further, Hart negligently and wantonly failed to include necessary safety precautions on the subject horse trailer and to prevent the incident that forms the basis for this lawsuit.

Under Alabama law, there are four elements to establish a case of negligence: "(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." Edmonson v. Cooper Cameron Corp., 374 F.Supp.2d 1103, 1106 (M.D.Ala.2005) (citation omitted). The law in Alabama strongly mandates a finding that Hart owed a duty to Plaintiff. "As a general rule, 'every person owes every other person a duty imposed by the law to be careful not to hurt him'". Carrio v. Denson, 689 So.2d 121(Ala.Civ.App.,1996) citing Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala. 1993) quoting Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 453, 13 So.2d 660, 663 (1943). "To determine whether a duty existed, this court should consider a number of factors, including public policy, social considerations, and whether the injury was foreseeable to [Defendant Hart]." Smitherman, at 324. The key factor is whether the injury was foreseeable by the defendant.

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if care is not exercised. . . . [T]he test here is, would an ordinary man in defendant's position, knowing what they knew or should have known, anticipate that injury of the nature of that suffered was likely to result.

Harvard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 307 302 So.2d 228, 232 (1974) (overruled on other grounds by Alfa Mut. Ins. Co. v. Smith, 540 So.2d 691 (Ala. 1988) (citations omitted).

> The existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the party; and (3) the type of injury or harm threatened. The *key* factor is whether the injury was foreseeable by the defendant.

Pritchett v. ICN Medical Alliance, Inc., 938 So.2d 933, 937 (Ala. 2006) (citations omitted.) See also Taylor v. Smith, 892 So.2d 887, 891-892 (Ala. 204); Patrick v. Union State Bank, 681 So.2d 1364, 1369 (Ala. 1996). In Alabama, the existence of a duty is a strictly legal question to be determined by the Court. Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833 (Ala. 2003); Ex parte Farmers Exchange Bank, 783 So.2d 24, 27 (Ala. 2000). As stated previously, Hart manufactures "shell" trailers and distributes these trailers through a network of dealers. Alteration or modification of these shells is not only foreseeable, but expected. In fact, Hart knew that there was up-fitting of its trailers, had visited Outlaw's up-fitting facilities, and was aware of the fact that up-fitting was going on. [1](Hart Page 36, line 19 – page 37, line 6). Hart did not check out DCL's dealer location, did not see if DCL was equipped to sell the trailers, and did no background check on DCL to see if they were qualified to sell Hart's trailers. (Hart Page 15, line 18 – page 16, line 7; Hart Page 16, line 22 – page 17, line 7; Hart Page 41, line 25 – page 42, line 11). Defendant Hart knew or should have known that it was foreseeable that consumers could be injured by its trailers. In applying the "duty" factors to this case, the evidence overwhelmingly

---

[1] It is apparent that Hart had a close relationship to Outlaw, calling the owners by their first names (Id.)

demonstrates that Hart owed a legal duty to Plaintiff to include necessary safety precautions on the subject horse trailer, to warn of the potential hazards associated with the use of its trailer and to prevent the incident that forms the basis for this lawsuit.

    **C.**    **Plaintiff's AEMLD Claim.**

To establish a claim under the Alabama Extended Manufacturer's Liability Act (AEMLD), a Plaintiff must show that:

> (1) he suffered injury or damage to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the Plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976)at 132-133.

Although "[a]n essential element of an AEMLD claim is proof that the product reached the consumer without substantial change in the condition in which it was sold...the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability." (Horn v. Fadal Machining Centers, LLC, 2007 WL 431427, (Ala. Feb 09, 2007) (citing Hicks v. Commercial Union Ins. Co., 652 So.2d 211, 218 (Ala.1994)) (quoting Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1027 (Ala.1993)). "A manufacturer or seller remains liable if...the alteration or modification was reasonably foreseeable to the manufacturer or seller." *Id.* (emphasis added).

Hart bases its motion for summary judgment mainly on the allegation that the trailer was modified or altered. Hart manufactures "shell" trailers and distributes these trailers through a network of dealers. Alteration or modification

13

of these shells is not only foreseeable, but expected. Hart visited Outlaw's facility and saw firsthand how they modified trailers. (Hart Page 36, line 19 – page 37, line 19). Through its dealer policy, Hart exerts control over its Dealers. Therefore, Hart is not relieved of liability as a matter of law. At the least, there is a genuine issue of material fact as to foreseeability which precludes summary judgment at this time. Further, "whether or not a product is defective is ordinarily a question for the jury." Horn v. Fadal Machining Centers, LLC, 2007 WL 431427, (Ala. Feb 09, 2007) (citing Joe Sartain Ford, Inc. v. American Indem. Co., 399 So.2d 281, 284 (Ala.1981), overruled on other grounds, Lloyd Wood Coal Co. v. Clark Equip. Co., 543 So.2d 671 (1989); see also Gean v. Cling Surface Co., 971 F.2d 642 (11th Cir.1992); Entrekin v. Atlantic Richfield Co., 519 So.2d 447, 449 (Ala.1987)).

## V.    CONCLUSION

Hart's summary judgment is due to be denied. The evidence demonstrates that Hart owed the Plaintiff a legal duty to warn of the potential hazards associated with the use of its trailer and/or awning and negligently failed to issue a notice of the hazard or recall regarding the hazard. The factors which determine the existence of a duty under Alabama law, i.e., the nature of the Defendant's activities, the master servant relationship of Defendant Hart and DCL, the relationship between the parties, the type of injury or harm threatened, and whether the injury was foreseeable, all point to the existence of a legal duty. Hart knew that its dealers would customize its shell trailers and that it was foreseeable that those alterations and modifications could cause death and

serious injury if proper safety precautions were not taken and strict adherence to safety regulations were not followed. Yet, Hart ignored its legal duty to Plaintiff by failing to design a reasonably safe product and failing to include necessary safety warnings and instructions to its dealers. As such, Hart's Motion for Summary Judgment is due to be denied.

As an aside, based on Hart's corporate representative's lack of knowledge, Plaintiff is preparing a Motion for Sanctions. Plaintiff requests additional deposition testimony be taken regarding this matter before this Court rules on Defendants Motion for summary judgment.

      /s/ D. Michael Andrews
D. MICHAEL ANDREWS (AND076)
MICHAEL J. CROW (CRO039)

BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 = office
(334) 954-7555 = fax


Mr. John M. Gibbs
Gibbs, Sellers, Vance & Bozeman, L.L.P.
Post Office Box 1276
Demopolis, Alabama 36732

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of April, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record as listed below.

                                                  /s/ D. Michael Andrews
                                                  OF COUNSEL

Gerald Swann, Jr.
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama 36102-2148

Mr. S. Anthony Higgins
Nix, Holtsford, Gilliland, Higgins & Hitson
Post Office Box 4128
Montgomery, Alabama 36103-4128

16