Case 2:05-cv-01183-MEF-SRW    Document 40    Filed 08/10/2006    Page 76 of 84

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROSALYN BASSETT, As the Administratrix and Personal Representative of the Estate of TERRY BASSETT, SR., <br><br> Plaintiff, <br><br> v. <br><br> KENNETH BRELAND, et al., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> *   CASE NUMBER: 2:05cv1183-MEF <br> * <br> * <br> * <br> * |

### AFFIDAVIT OF KAY HART

The undersigned, after having been duly sworn under oath, states and deposes as follows:

1. My name is Kay Hart. I am a resident of the State of Oklahoma. I make this affidavit based upon my own personal knowledge of the matters set forth herein.

2. I am currently employed as the Vice President of Hart Manufacturing, Inc., (hereafter Hart) one of the Defendants in the above-styled lawsuit currently pending in the United States District Court for the Middle District of Alabama, Northern Division.

3. Hart is a company with its principal place of business in Chickasha, Oklahoma. Hart is engaged in the business of manufacturing trailers, including aluminum horse trailers. Upon information and belief, the Plaintiff in the above-referenced lawsuit alleges that a trailer manufactured by Hart bearing Serial Number 1H93H232221051035 was involved in an automobile collision on March 11, 2005, which occurred in or near Uniontown, Alabama, and which resulted in the death of the Plaintiff's decedent,



PLAINTIFF'S EXHIBIT
7

Terry Bassett. Based on information available to me, Hart manufactured the shell of the horse trailer which was being towed by Co-Defendant, Caleb Breland, at the time of the accident.

4.  Hart sells trailers through a network of dealers operating in several states located in the United States. In 2001, one of its dealers was DCL Trailers of 12130 Pecan Avenue, Philadelphia, Mississippi. In October of 2001, DCL Trailers, was an authorized dealer for Hart Trailers manufactured by Hart The dealer principal of DCL Trailers was, in 2001 and 2002, Dr. Duane Stokes, Dr. Stokes is a doctor of veterinary medicine who practices in Philadelphia, Mississippi.

4.  The aluminum horse trailer involved in the Bassett accident was sold by Hart to DCL Trailers on October 16, 2001. Attached hereto as **Exhibit A** is a true and correct copy of the invoice issued by Hart to DCL Trailers in the amount of $19,217.80, representing the purchase price of the four-horse aluminum trailer purchased by DCL Trailers. In addition, Exhibit A contains true and correct copies of all documentation maintained by Hart relating to the sale of the horse trailer involved in the Bassett accident to DCL Trailers. DCL Trailers paid the invoice in full after the trailer was picked up by representatives of DCL Trailers on or about October 16, 2001. Included in the documents set forth as Exhibit A to this affidavit is the delivery acknowledgment dated October 16, 2001, in which DCL Trailers took possession of the trailer. After DCL Trailers took possession of the trailer involved in the Bassett accident, Hart did not have any further involvement with nor did it hold any ownership interest in the trailer sold to DCL Trailers on October 16, 2001.

2.

5. At the time the trailer was sold by Hart DCL Trailers it did not have an awning or any part of an awning assembly system installed on it. Hart does not manufacture trailer units with awnings, nor does it enter into contracts or agreements with third-party vendors to install awnings on trailer shells manufactured by Hart. Hart trailer shells are not in any way specially designed or manufactured to accommodate the addition of an awning by the purchaser or any third party.

6. Hart did not have any involvement whatsoever in the selection or installation of an awning on the trailer it sold to DCL Trailers in October of 2001. Hart did not have any communications of any kind with representatives of DCL Trailers, Outlaw Conversions, or Dometic concerning the use or installation of an awning on the trailer sold to DCL Trailers in October of 2001. Hart did not enter into any agreements or contracts with DCL Trailers, Outlaw Conversions, or Dometic Corporation for the purchase or installation of an awning or awning assembly system on the trailer shell sold to DCL Trailers in October of 2001.

7. Hart was not involved in the following activities:

   a. Making the modifications to the trailer or the manufacture of the trailer in any way to accommodate the installation of an awning or awning assembly system, including awnings manufactured by Dometic Corporation.

   b. The decision to install an awning on the trailer involved in the Bassett accident.

   c. The selection of a person or entity to install an awning or awning assembly on the subject horse trailer.

3.

    d.    The selection of an awning manufacturer, awning product, or awning assembly system to be installed on the trailer involved in the Bassett accident.

    e.    The recommendation that an awning be purchased, installed, or used on the trailer involved in the Bassett accident.

    f.    The design, manufacture, assembly, inspection, sale, or distribution of any awning product or awning assembly system, including that installed or attached to the trailer involved in the Bassett accident.

    g.    The manner of or method used to installed the awning and awning assembly system on the trailer involved in the Bassett accident.

    h.    Any inspections of the awning or awning assembly system after it was installed on the trailer involved in the Bassett accident.

8.    At no time was Hart made aware that the trailer sold to DCL Trailers in October of 2001 was thereafter modified by the addition of an awning or awning assembly system.

9.    The awning and awning assembly system, including locking devices and latches, were added to the trailer shell after it left the control, possession, and custody of this Defendant and were installed by persons other than employees of Hart.

10.    Hart had no knowledge of nor involvement in the modification or additions made to the trailer shell, including the making of recommendations relating to awnings or awning assembly systems, the modification of the subject trailer, the decision to install and add an awning or awning assembly system to the trailer, including locking devices and latches or the manner or method in which the awning was attached.

_____
KAY HART

Sworn to and subscribed before me
this 7TH day of August, 2006.

_____
Notary Public   EXPIRES: 01-20-2010
                Comm No.: 02000633

5.