

# HART MFG INC.
# 2002
# DEALER POLICY

Prepared for

DCL TRAILERS LLC
12130 PECAN AVENUE
PHILADELPHIA MISSISSIPPI 39350-5232
601-656-4310

HART MFG INC.
PO DRAWER C
CHICKASHA OK 73023
405-224-3634
www.harttrailer.com

Effective

January 01, 2002

Through

December 31, 2002

The purpose of this policy is to establish a set of guidelines that will allow each HART Dealer the freedom to operate at their maximum potential, without interfering or restricting another HART Dealer's efforts, in an equitable and ethical manner.

PLAINTIFF'S EXHIBIT 13

<u>**HART MFG INC. 2002**</u>
<u>**DEALER POLICY**</u>

THIS **POLICY** shall remain in effect the calendar year of JANUARY 01, 2002 through DECEMBER 31, 2002. WHEREAS, **HART** a Oklahoma Corporation located at Chickasha Oklahoma is the manufacturer of a line of horse, stock and cargo trailers and, WHEREAS, *DEALER* desires to sell trailers pursuant to a Dealer Policy with said trailer to be supplied to *DEALER* by **HART** and to be sold by *DEALER* as more particularly set forth herein.

1) **HART** grants to *DEALER* the right to sell trailers and products manufactured by **HART**, and to solicit orders for the sales of such products manufactured by **HART** to retail customers.

2) *DEALER* is to diligently promote the sale of trailers and products manufactured by **HART** and to have a minimum of 5 new **HART** Trailers on display or on order at all times.

3) *DEALER* is to have suitable premises for the showing of said trailers so as to adequately display and provide necessary service of said trailers as agreed upon between **HART** and *DEALER*.

4) *DEALER* further is to promote and sell **HART** Trailers in a professional manner at all times.

5) Be it understood, that this Policy will not be in effect until the *DEALER* has placed the required minimum order with **HART**.

6) *DEALER* is to submit a completed "*Dealer Application*" each policy year with copies of; a <u>current financial statement</u>, <u>federal identification number</u>, <u>state dealers license</u>, <u>state sales tax permit</u> and <u>copies of all other state and local licenses</u>. *DEALER* further is to maintain at all times the legal documents required.

7) *DEALER* is to buy a minimum of <u>$250,000.00 or 24 trailers</u> per twelve month period from **HART** to maintain *DEALERSHIP*.

8) *DEALER* will at no time represent their dealership or themselves as an employee or agent for **HART**. At no time will *DEALER* act as a legal agent of **HART**, or obligate **HART** in any way.

9) **HART** encourages each *DEALER* to visit HART's manufacturing facility each year.

10) <u>**TERMS and CONDITIONS:**</u> **HART** terms are *"Due upon Invoice"*. All MSO's (CO's) will be held until invoice is paid in full. *Any invoice* that payment has not been received within 15 days will be charged interest from the date of invoice in the amount of 2% per month (24% per annum). Any account in arrears can be put on C.O.D. No credits will be issued against dealers parts account (*warranties & co-op advertising*) if parts or trailer account is over 30 days past due.

11) **SAFETY COMPLIANCE:** *DEALER* is to adhere to all federal, state and local safety and regulatory laws. *DEALER* further is to only order the correct type, size and weight capacity for the retail customers intended use. *DEALER* is to cooperate fully with respect to matters pertaining to product safety, product liability and compliance to federal, state or local regulations as applicable.

12) **TERRITORY:** *DEALER* agrees with **HART** on dealer territory. **HART** will not establish another dealership within *DEALERS* exclusive territory. Exclusive *Dealer* Territories and shows are based upon geographic areas and specific events. *DEALER* understands that territory can be changed by **HART** based upon *DEALERS* sales volume. All sales leads received by **HART** will be referred directly to geographically closest *DEALER*. Be it understood, *DEALER* will not hold **HART** responsible for the sales of another authorized **HART** *DEALER* to a retail customer in the *DEALERS* territory. **HART** reserves the right to assign specific dealer(s) to be exclusive at **HART** Corporate Sponsored shows and shows with **HART** owned booth space, regardless of territorial location of show. **HART** Corporate Sponsored shows include, but not limited to; *APHA World Show and regionals, AMHA National Show and regionals,* and *USTPA Finals and regionals.* Shows with **HART** owned booth space include, but not limited to; *All American Quarter Horse Congress, World Quarter Horse Show,* and *National Western Stock Show.*

13) Your *DEALER* territory is: A 50 mile radius of Philadelphia Mississippi.

14) **TRADE SHOW PARTICIPATION:** *DEALER* is to actively participate in appropriate trade shows and promotional events in *DEALERS* territory. Should a *DEALER* desire to work a show outside of their territory, the *DEALER* should contact **HART** to find out if the area is open territory. Trade shows outside of any **HART** *DEALER* territories are open to any and all **HART** DEALERS. Only those *DEALERS* working the "**HART**" booth will be allowed to work Corporate Sponsored or **HART** owned booth space shows. No other *"DEALERS"* booth(s) or "Parking Lot Type" displays will be allowed. **HART** reserves the right to assign specific *DEALER*(s) to be exclusive at **HART** Corporate Sponsored shows and shows with **HART** owned booth space, regardless of territorial location of show. **HART** reserves the right to assign specific *DEALER(s)* at Corporate Sponsored Regional Shows. **HART** Corporate Sponsored shows include but are not limited to; *APHA World Show and regional shows, AMHA National Show and regional shows,* and *USTPA Finals and regional shows.* Shows with **HART** owned booth space include but are not limited to; *All American Quarter Horse Congress, World Quarter Horse Show,* and *National Western Stock Show.*

15) **CO-OP FOR PRINTED ADVERTISING AND TRADE SHOW SPACE:** **HART** will co-op 50/50 with *DEALER* on printed advertising and trade show space (only), up to a maximum of 0.5% of *DEALERS* 2001 trailer sales. *DEALERS* 2002 maximum available co-op credit is $1,250.00. Any trade show, event or advertising that **HART** co-ops, *DEALER* will maintain *exclusive exposure* for **HART**.

*DEALER* must submit a copy of each paid invoice along with verification of payment, before **HART** will issue co-op credit to *DEALERS* part account. All co-op requests and paid invoices must be received by December 31, 2002 to be considered for the year 2002 co-op account. First year dealership co-op amount for new *DEALERS* will be based on a minimum ($250,000.00) sales volume, pro rated by the number of months *DEALER* has had inventory in stock.

16) **PROMOTIONAL MATERIAL:** **HART** will furnish *DEALER* with a reasonable amount of brochures, literature and sales material to enable *DEALER* to be knowledgeable of the product as to solicit sales of trailers. Each *New DEALER* will receive one complete set of *DEALER Demonstration Models*, and up to *Three DEALER Price Books*. Additional *Demo* models and *price books* may be purchased and will be charged against co-op account until co-op is depleted. Thereafter, *DEALER* will purchase outright.

17) **VOLUME DISCOUNT STRUCTURE:** *DEALER* discount will be reviewed and adjusted accordingly upon bi-annual *DEALER* review, on January 1st and July 1st of each year. **HART** reserves the right to review and adjust *DEALER* discount percentages. Your *DEALER* discount is **30%.** *DEALER* discount structure is based upon the previous 12 months sales of:

   $250,000.00 to $500,000.00   =  30% off list price

   $500,001.00 to $1,000,000.00 =  33% off list price

   $1,000,001.00    PLUS        =  35% off list price

18) A.) **TRAILER and PART ORDERS:** *DEALER* or *DEALER'S* employee will place all orders to **HART**. All trailer orders will be complete, including all optional equipment and color information. A 25% non-refundable deposit may be required, based solely on **HART**'s judgment, on very custom orders. **HART** strongly recommends that *DEALER* require a 25% non-refundable deposit from retail customers on all custom orders. *DEALER* understands that **HART** works directly with *DEALER*, and that *DEALER* is to work directly with the retail customer.

   B.) **ORDER CONFIRMATIONS:** All orders will be confirmed to *DEALER*, including specifications and drawings, via fax on or before start of production. **HART** will also fax customer copy with the retail price directly to the *DEALER*. Upon receipt of the confirming order, *DEALER* should forward confirmation to the retail customer promptly, and, have retail customer accept and return signed copy to *DEALER*.

   B.) **ORDER CHANGES:** *DEALER* will place all change orders in written form, complete with the serial number. Depending on the change and how far along a trailer is in production, change orders may or may not be possible, based solely on **HART**'s judgment.

*DEALER* agrees to a $100.00 charge, which will be applied to all trailer invoices for each change issued after 4 days of faxed confirming order. *DEALER* understands change order pricing may vary from published price sheets, depending upon the stage of completion at the time the change order is received. All change orders requiring reworking of the order will be charged actual time and materials required to complete changes. *DEALER* further understands all change orders must be received from *DEALER*, no change orders will be accepted directly from the retail customer.

D.) **TRAILER SHIPMENTS AND PICKUPS:** *DEALER* will arrange shipment of all trailers and *DEALER* will notify **HART** beforehand of such arrangements. *DEALER* will pay a $150.00 fee for each retail customer who picks up at the **HART** factory. *DEALER* understands no trailer or parts order will be released for shipment until financial arrangements have been made with and approved by **HART**'s accounting department.

E.) **ORDER CANCELLATION:** *DEALER* will not cancel any order after the earlier has occurred:
1. The commencement of manufacturing of any part or sub assembly.
2. The date any specialty or non-standard part has been ordered.

19) **WARRANTY:** *DEALER* will read and understand the "*Manufacturers Warranty*". *DEALER* agrees to inspect each trailer upon receipt, and to instruct each retail purchaser on the operations, maintenance and upkeep of such trailer. *DEALER* will review "*Manufacturers Warranty Form*" with each retail customer and will forward completed form to **HART** within the required 15 days following retail purchase date *as required by the Department of Transportation*. *DEALER* understands that failure to return form in 15 days will void the five-year limited manufacturer warranty. Any trailer retail sold that has not had manufacturers warranty returned within 15 days of sale date, will have a 1 year limited warranty from date of manufacturer.

The 5-year limited warranty will start on all demonstration and sponsorship trailers on the date the trailer enters service. The original retail purchaser of sponsorship trailers will receive a minimum of 30 days of the 1 year limited warranty and the *remainder* of the 5-year limited warranty upon the return of the warranty registration with the date sold listed. This registration must be returned to **HART** within 15 days of the date of purchase.

*DEALER* will get prior approval for all warranty work from **HART**. Upon approval from **HART**, *DEALER* will be instructed as to the proper procedures to handle the specific problem. *DEALER* is to handle all warranty claims with their retail customers. **HART** must be notified of all warranty claims within 10 days of *DEALERS* notification of problem.

➢ All warranty claims must be accompanied by supporting data, i.e., customers name and address, model, serial number, date of manufacturer, detailed description of problem, parts/materials required and labor estimates, in order to facilitate a timely response. All warranty claims will be assigned a claim number and all correspondence in reference to claim must bear this number.

> All problems are considered to be warranty claims **only**, until authorized by **HART** and or component supplier. All authorized warranties will be either; a) paid to *DEALER* via **HART** check, if *DEALERs* account is paid in full or b) credited towards *DEALERs* parts account balance. All parts purchased from **HART** that are used for warranty considerations are to be paid for according to Section 10, terms and conditions.

20) **PRICING:** *DEALER* will accept any and all price increases that become necessary during the course of this agreement. **HART** will notify *DEALER* of any such changes, and the date of the effective changes. **HART** agrees that any changes in pricing will be for all **HART** *DEALERS*.

21) **FAX MACHINE:** *DEALER* will install and maintain a fax machine.

22) **NON-WHOLESALE POLICY:** *DEALER* will not act as a distributor to other **HART** or NON-**HART** *DEALERS* without the prior written consent of **HART**. **HART** may from time to time authorize a *DEALER* to sell a specified trailer to another *DEALER*. *DEALER* will not have a sales representative or employee, that principally resides outside of *DEALERS* exclusive territory, without prior written approval from **HART**.

23) **NOT A FRANCHISE:** **HART** and *DEALER* agree that this policy shall not be considered a franchise agreement. *DEALER* represents that it is currently engaged in the sale of products manufactured by company's other than **HART** and is entering into this policy in order to add the products manufactured by **HART** to its existing line of goods, or that it is a beginning business which will also sell or lease equipment, products or supplies or perform services which will not be supplied by **HART**.

24) **POLICY ENFORCEMENT:** *DEALER* will adhere to this policy for the betterment of all parties concerned. *INTERPRETATION & ENFORCEMENT* of *DEALER* policy infractions will be the sole judgment of **HART** management. Any *DEALER* violations may cause appropriate action to be taken, including but not limited to loss of up to 5% of dealers discount structure, for up to one year from date of infraction.

25) **TERMINATION:** **HART** or *DEALER* may terminate DEALERSHIP at any time.

26) **EFFECT OF TERMINATION:** Upon termination of the DEALERSHIP for any reason, **HART** shall have the option to cancel any or all unfilled orders for trailers which have been placed by *DEALER*. Special consideration will be given to those orders based on bona fide customer orders.
**HART** shall have the right but not the obligation to purchase from *DEALER* all new current standard equipment model trailers and accessories originally purchased from **HART**, at **HART**'s original net billing price to *DEALER*, less the freight charges and any other costs which may be incurred by **HART**. In the event any reconditioning is necessary for **HART** to re-sell the re-purchased trailers, such reconditioning costs incurred by **HART** will be deducted from the above repurchase price.

Termination of DEALERSHIP shall not release either party from the payments of any sums then owing, or from any other unsatisfied obligations. In the event of termination of DEALERSHIP, *DEALER* shall, within ten (10) days after the effective date of termination, return to **HART**, prepaid, all printed matter, price books, computer software and the remainder of any and all supplies furnished to *DEALER* by **HART**.

Immediately upon termination of DEALERSHIP, *DEALER* shall cease any representation that it is an authorized *DEALER* of **HART** trailers or accessories and shall delete any reference to **HART** or manufacturer's product or **HART**'s name from its advertising, correspondence, contract forms and other materials.

27) **LEGAL INTERPRETATION:** It is understood that if any portion hereof is invalid under any federal, state, local or other law or regulation, or as a result of final court decree or administrative or governmental determination that portion only of this Policy shall be ineffective and void insofar as such law has application. If any portion of this Policy is altered or deleted by operation of this clause, either party hereto shall have the right to terminate this DEALERSHIP.

28) **FORCE MAJEURE:** Neither **HART** nor *DEALER* shall be liable to the other for nonperformance or delay in performance of any of its respective obligations under this Policy resulting from any act of God, any act of governmental authorities, flood, fire, war, riot, civil commotion, insurrection, natural catastrophe, strikes, unavailability of machinery equipment, spare parts, raw materials, or supplies, or any other cause beyond the parties reasonable control, provided the party prevented or delayed from performing makes reasonable efforts to remove the obstacle or obstacles to performance and to resume its performance at the earliest practical time.

29) **RENEWAL APPLICATION:** *DEALER* agrees to submit required annual renewal application for each subsequent *DEALERSHIP* year.

29) **PRIOR POLICIES:** *DEALER* and **HART** each agrees this policy will cancel all prior policies and agreements, written or verbal. This Policy supersedes any implied or assumed agreements.

**HART**'s policy for DEALERSHIPS is contained herein and no additional or different terms or conditions stated by *DEALER* shall be binding unless agreed to by **HART** in writing. The failure of **HART** to insist upon strict performance of any provision of this policy shall not constitute a waiver of any other provision and shall not be considered a continuing waiver of any such provision or any of **HART**'s rights unless so specified.

**HART** reserves the right to modify or change policy as deemed necessary.

<u>Final review is a decision of **HART** and **HART** reserves the right of reviewal.</u>

