IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROSALYN BASSETT, As the Administratrix and Personal Representative of the Estate of TERRY BASSETT, SR., | * * * * * | |
| Plaintiff, | * * | |
| v. | * * | CASE NUMBER: 2:05cv1183-MEF |
| KENNETH BRELAND, et al., | * * | |
| Defendants. | * | |

**REPLY BRIEF OF HART MANUFACTURING**

COMES NOW, Hart Manufacturing, Inc., one of the Defendants in the above-styled action, and in response to the Plaintiff's brief in opposition to Hart's motion for summary judgment, states as follows:

**I. PRELIMINARY COMMENTS CONCERNING TESTIMONY OF KAY HART**

The Plaintiff filed a brief in opposition to Hart Manufacturing's motion for summary judgment. In the section entitled "Procedural Background," the Plaintiff was critical of the testimony elicited from Kay Hart, as corporate representative of Hart Manufacturing, produced pursuant to a notice of deposition issued by the Plaintiff on April 12, 2007. In her brief, the Plaintiff asserted that Mrs. Hart was unable to respond to questions. Out of the 56 pages of testimony Mrs. Hart gave on April 18, 2007, the Plaintiff pointed to 16 or 17 questions which she claims Hart did not or could not answer with a response

deemed to be sufficient by the Plaintiff. It is important that the Court review the notice of deposition and the areas of testimony about which the Plaintiff asked Hart to produce a witness. The areas in which the Plaintiff was most critical, Mrs. Hart's perceived lack of knowledge with respect to the engineering of Hart's trailers; Hart's selection of and interaction with DCL Trailers, Inc., the dealer which sold the subject trailer involved in the Plaintiff's accident; and, the average cost of Hart trailers, were not areas specified by the Plaintiff in her notice. Instead, the Plaintiff asked Hart to produce witnesses to testify first about "General information regarding Hart Manufacturing" and Hart's "general corporate structure" and then listed more specific areas of inquiry, several of which were not explored at all by the Plaintiff during Mrs. Hart's deposition. None of the more specific requests dealt with product engineering, the selection of dealers, Hart's relationship with DCL Trailers or the cost and marketing of Hart trailers. It is the Defendant's belief that Mrs. Hart was properly designated as a corporate representative for Hart Manufacturing for categories that were included in the notice and if the Plaintiff desired or wanted a witness to testify to matters outside or beyond the scope of that notice, the Plaintiff should have asked Hart to produce such a witness.

## II.  SUMMARY OF PLAINTIFF'S CLAIMS

With all that said, the brief filed by the Plaintiff does not establish any genuine issue of material fact and does not alter Hart's assertion that summary judgment is due

to be granted as a matter of law. In opposing summary judgment, the Plaintiff made the following arguments:

A. That a master-servant relationship existed between Hart Manufacturing and DCL Trailers, the dealer which sent the trailer to Outlaw Conversions to have an awning placed on it after purchasing it from Hart;

B. That Hart had a duty to warn the Plaintiff concerning alleged defects in the locking mechanisms of the Dometic Corporation two-step awning because it knew generally that awnings may be added to trailers after sale; and

C. That the Alabama Extended Manufacturers Liability Doctrine imposes liability on Hart because a "modification" made to its trailers, the installation of an allegedly defective Dometic two-step awning, was reasonably foreseeable

### III.  THE MASTER-SERVANT RELATIONSHIP ARGUMENT

In attempting to make an argument based upon the Master-Servant Doctrine (vicarious liability based on respondeat superior), Plaintiff completely disregards the facts in this case and simply assumes that a master-servant (employment) relationship existed between Hart Manufacturing and its independent dealer, DCL Trailers of

Philadelphia, Mississippi. The Plaintiff's brief is silent as to DCL Trailers status as an independent contractor as shown by the dealer agreement. DCL Trailers' status should be determined applying Alabama law enumerating the requirements for the creation of an independent contractor relationship as opposed to that of master-servant (employment).

The Plaintiff cited the Court to three cases, none of which have any applicability to the facts before it in this case. The first, <u>Horn v. Fadal Machining Centers</u>, 2007 WL 241427 (Ala. 2007), was referenced purportedly because it cites the case of <u>Hendley v. Springhill Memorial Hospital</u>, 575 So.2d 547 (Ala. 1990) for the proposition that proof of a master-servant relationship is tested by the degree of control the alleged master retains over the alleged servant. <u>Horn</u> did not in any way deal with issues relating to the master-servant doctrine and a review of the case discloses that it did not even mention the <u>Hendley</u> decision for any reason, including the test to be imposed in determining the existence of a master-servant relationship. Instead, <u>Horn</u> dealt with the insufficiency of one defendant's motion for summary judgment (the defendant's failure to file a narrative statement of uncontested facts in support of its motion) and a second defendant's liability under the Alabama Extended Manufacturer Liability Doctrine for modifications to its own product.

The Plaintiff directed the Court to <u>Ware v. Timmons</u>, 206 WL 1195870 (Ala. 2006). <u>Ware</u> does not have any applicability to the facts before the Court today. In <u>Ware</u>, the issue before the Court was whether or not a <u>co-employee</u>, in that case an

anesthesiologist named Ware, could be held vicariously liable for the actions of a nurse anesthetist named Hughes. Both were stipulated to be employees of Anesthesiology & Pain Medicine of Montgomery, PC, the anesthesiology group for whom they worked. The court rejected the Plaintiff's contention that Dr. Ware was vicariously liable under the Doctrine of Respondeat Superior (master-servant) for the actions of nurse Hughes. While the court found that Dr. Ware had a reserved right to exercise control over the activities of nurse Hughes, he did not have the right to choose, select, or dismiss her. That right was reserved for the corporation for whom both of those individuals worked. Absent this second requirement, a right to choose, select, or dismiss employees, the court held that Dr. Ware could not be held vicariously liable under the Master-Servant Doctrine for the alleged negligence of the co-employee nurse anesthetist.

    Finally, by implication, the Plaintiff directed the Court to <u>Hendley v. Springhill Memorial Hospital</u>, 515 So.2d 545 (Ala. 1990), which, again, has no application. In <u>Hendley</u> the Court never got to the issue of the existence of a master-servant relationship since it found that, even if one existed, the alleged servant's sexual assault was outside his scope of employment.

    The Plaintiff appears to simply presume that a master-servant (employment) relationship existed between Hart Manufacturing and its dealer, DCL Trailers, Inc. The Plaintiff completely ignores the fact that the relationship between Hart and DCL Trailers is that of an independent contractor and, as a result, is subject to a different legal test. Under the law as it relates to independent contractors, the reserved right of control, rather

5.

than the actual exercise of control, is the test of whether or not a relationship between two parties is that of independent contractor. (See <u>Gossett v. Twin County Cable TV, Inc.</u>, 594 So.2d 636 (Ala. 1992)). Under Alabama law, an independent contractor relationship exists when the contractor is responsible to the other party only as to the result of the work to be performed under the contract and not as to the manner undertaken in performing it. <u>Clark v. Container Corp. of America, Inc.</u>, 936 F.2d 1220 (11th Cir. 1991). Retaining a right to inspect or supervise a project to ensure compliance with the terms of a contract does not take one outside of the independent contractor relationship and into that of master and servant. <u>Daniels v. Mead Coated Bd., Inc.</u>, 858 F.Supp 1103 (MD.Ala. 1994); <u>Shaw v. CB&E, Inc.</u>, 530 So.2d 401 (Ala. 1993); <u>Weeks v. Alabama Electric Coop, Inc.</u>, 419 So.2d 1381 (Ala. 1982). Alabama courts have consistently held that whether or not the relationship is that of independent contractor or master and servant depends upon whether the entity for whom work is being performed has reserved the right of control over the means by which the work is to be done. <u>Pugh v. Butler Telephone Co.</u>, 512 So.2d 1317 (Ala. 1987). In <u>Fuller v. Tractor & Equipment Co., Inc.</u>, 545 So.2d 757 (Ala. 1989) the court held that a company which installed an air conditioning system in a front-end loader was not acting as an employee or servant of the seller of the front-end loader which entered into a contract to have the air conditioning system installed, but was instead acting as an independent contractor since the installer provider its own workers and equipment and the seller did not exercise control over the manner of installation. Alabama courts have frequently held that a manufacturer's dealer

is not an agent, (see <u>John Deere Const. Equipment Co. v. England</u>, 883 So.2d 173 (Ala. 2005); <u>McLemore v. Ford Motor Co.</u>, 628 So.2d 548 (Ala.1993), especially in situations where the evidence showed the dealer sold other manufacturer's products; where the dealer agreement clearly stated the dealer was not an agent; and, where the dealer exercised sole authority over the day-to-day activities of the dealership. That is precisely the case here. The dealer agreement acknowledges that DCL Trailers was not an exclusive Hart dealer (see Paragraph 23). It specifically states that DCL Trailers was not an agent of Hart (see Paragraph 8) and in reviewing the document as a whole does not reserve any right to control the day-to-day activities of DCL Trailers.

In attempting to establish a master-servant relationship, the Plaintiff points only to the dealer policy in force at Hart. A review of that document shows that Hart Manufacturing did not reserve any right to control the day-to-day activities of DCL nor did it reserve a right to tell DCL how it was to go about selling its trailers. The dealer policy and the five sections quoted by the Plaintiff do not establish a reserved right of control over the manner in which DCL was to operate as a dealer but only establishes criteria to ensure that the manufacturer's product will be marketed and paid for.

In addition to a complete lack of evidence of a master-servant relationship existing between Hart and its dealer, DCL Trailers, <u>there is absolutely no evidence in the record, nor is there any allegation by the Plaintiff in her complaint, that DCL Trailers did anything to cause or contribute to Mr. Bassett's death</u>. The Plaintiff did not sue DCL Trailers and did not make any allegations of wrongdoing against that entity in her complaint. There

7.

is no evidence adduced during discovery which indicates that DCL Trailers did anything wrong or in any way caused or contributed to the injuries sustained by the death of Mr. Bassett. The evidence to date shows the crux of the Plaintiff's complaint to be whether or not the locking devices on the Dometic two-step awning were properly designed so as to avoid opening while the vehicle was in transit. The only evidence in the record of the involvement of DCL Trailers is that it sent the trailer in question to Outlaw Conversions to have the living quarters altered and to have an awning attached to the trailer after it was purchased from Hart.

## IV. NEGLIGENT FAILURE TO WARN

Plaintiff argues that Hart owed Mr. Bassett a duty to warn against alleged dangerous conditions (defects in the locking devices) of the Dometic Corporation awning installed on the trailer after it left Hart's possession. In attempting to assert a negligence claim for failure to warn, the Plaintiff points only to the fact that representatives of Hart were generally aware that, in the past, awnings had been installed by conversion companies on Hart trailers. There is absolutely no evidence whatsoever in the record that Hart was aware that the specific trailer involved in this accident, the one sold to DCL Trailers in October of 2001, would be outfitted with a Dometic two-step awning or any one of the other many awnings commercially available. There is no evidence to suggest that Hart knew that DCL Trailers was going to have an awning installed on this trailer. There is absolutely no evidence that Hart was aware at the time of sale that a Dometic

Corporation two-step awning would be installed by Outlaw Conversions on the trailer sold to DCL. Hart Manufacturing did not have any specific information from any source in its possession to indicate that any manufacturer's awning was going to be placed on this trailer or that the awning was defective. Kay Hart testified that she and others at Hart Manufacturing had never been made aware of any alleged defects or deficiencies in the locking devices on the Dometic Corporation two-step awning or any other awning and had never received a complaint from any source of awnings separating from a trailer while the trailer was in motion. In short, there is absolutely no evidence that Hart had knowledge that a specific Dometic Corporation awning was going to be installed on the trailer, as a result, could not have warned, and did not have any duty to warn ultimate users of the alleged defects in the Dometic Corporation two-step awning.

### V. ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

The Plaintiff also asserts that the Alabama Extended Manufacturers Liability Doctrine (AEMLD) applies to Hart. The Plaintiff argues that the attachment of an awning to Hart's trailer was "foreseeable" and, as a result, Hart should be held responsible for alleged design defects in the Dometic awning.

The Plaintiff is essentially getting one step farther down the road than the AEMLD allows her to go. The Plaintiff has quoted several cases which stand that the proposition that an entity, which places into the stream of commerce a product which is defective or will become defective after foreseeable alteration and modification, can be held liable under the Doctrine. The idea being, a manufacturer is responsible for product design

9.

and should be encouraged to design its products in such a way to avoid being rendered unsafe through foreseeable modification. Here there is no evidence of any alteration, modification, or defect to or in any product manufactured by Hart.

In <u>Casrell v. Altec Industries, Inc.</u>, 335 So.2d 128, 133 (Ala. 1976), the court stated that under the AEMLD a plaintiff must show:

1. She suffered injury or damage to herself or her property <u>by one who sells a product in a defective condition</u> unreasonably dangerous to the plaintiff as the ultimate user or consumer.

2. <u>The seller engaged in the business of selling such product</u> and

3. It is <u>expected to and does reach the user or consumer without substantial change in the condition</u> in which it is sold.

At the very heart of the AEMLD is the requirement that liability be imposed on a manufacturer <u>which places its product into the stream of commerce</u> in a defective condition. In this instance, Hart Manufacturing made a shell trailer which it sold to its dealer. At the time the trailer left Hart's possession, it was not outfitted with a Dometic two-step awning. That work was done at the request of DCL Trailers and without notice to or knowledge of Hart. There is absolutely no evidence from any source that Hart was aware that an awning would be placed on the trailer or that this particular Dometic Corporation awning would be installed. Hart manufactured a shell trailer and did not make any specific modifications to its trailer to accommodate the placement of awnings.

While Hart Manufacturing was familiar with Outlaw Construction and, on at least one occasion, had visited that company, it did not have knowledge that Outlaw expected and intended to install a Dometic Corporation awning on the trailer at the time the trailer was sold to DCL.

While Defendant has been unable to locate an Alabama case presenting this precise fact situation, the Court's rationale in Sanders v. Ingram Equipment, Inc., 531 So.2d 879 (Ala. 1988) is instructive as to how this Court should resolve Plaintiff's AELMA claim. In Sanders, the sole issue was "can a manufacturer of a garbage packer, which a manufacturer mounts on a truck chassis, be held liable under the Alabama Extended Liability Doctrine for an injury resulting from a defect in the chassis, not in the packer?"

In Sanders, General Motors sold a truck cab and chassis to its dealer, Leach Pontiac GMC, which in turn placed an order with Ingram Equipment to have a Heil Corporation garbage packer installed on the GM chassis. Heil mounted the packer on the GM chassis and delivered the completed vehicle to Ingram which in turn delivered it to Leach Pontiac GMC. The truck was sold to Whitfield Sanitation Company which employed the plaintiff. The plaintiff was injured when he slipped off an allegedly defectively designed running board. There was no evidence that the packer was defective, only that the GM chassis (which included the running board) was. The plaintiff alleged that the "completed" vehicle was defective when taken as a whole.

The court resolved the issue in favor of the component manufacturer, stating:

11.

The paramount issue raised on appeal is whether someone who manufactures a nondefective component and then participates in assembling the nondefective component onto a defective product, can be held liable under the AEMLD for injuries occurring as a result of the defect in a component not manufactured by that party.

This Court, in *Andrews v. John E. Smith's Sons Co.*, 369 So.2d 781, 784 (Ala. 1979), addressed this specific issue, stating:

> [A] manufacturer who uses component parts in manufacturing or assembling a product for sale as a complete unit may be liable under appropriate circumstances where the defect is in a component part. But [the defendant] is not in this instance manufacturing products in this fashion. It has simply made replacement parts which were not alleged to be defective in themselves. The alleged defect here is in the design of the meat grinder, which [the defendant] was not responsible for.  Under [plaintiff's] approach, a tire manufacturer could be liable for injuries resulting from the defectively designed body structure in an automobile.
>
> We find that the rationale of *Andrews* is applicable here; therefore, we hold that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce. As this Court stated in *Atkins, supra*, "the gravamen of the action [under AEMLD] is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff."
>
> * * *
>
> Because Sanders did not allege that Ingram and Heil manufactured or sold a defective component and offered no proof of a causal relationship between his injury and some action traceable to those defendants, there was no genuine issue of material fact presented and summary judgment was properly granted.  See Rule 56(c), Ala.R.Civ.P.

(531 So.2d 881.)  (Emphasis Added)

12.

In this case, there is no allegation that Hart designed or manufactured a defective trailer. The crux of Plaintiff's claim is that a defective awning was installed on the trailer after it left Hart's possession. There simply is no evidence that Hart manufactured, sold, or otherwise placed into the stream of commerce a product which was defective. The alleged defective condition was the design of locking devices on the awning that allowed it to open while in transit, not the design and manufacture of the trailer to which it was attached after it left Hart's possession and control.

THEREFORE, for the reasons set forth above, Hart Manufacturing Company respectfully requests the Court enter summary judgment in its favor as to all claims made by Plaintiff.

/s/ Dennis McKenna
DENNIS McKENNA (MCKED3744)


/s/ J. Ritchie M. Prince
J. RITCHIE M. PRINCE (PRINJ1903)
Attorneys for Hart Manufacturing, Inc.
Prince, McKean, McKenna & Broughton, L.L.C.
P.O. Box 2866
Mobile, AL 36652
Phone: 251-433-5441
Fax:    251-431-0159
E-Mail: dm@princemckean.com
          rp@princemckean.com


## CERTIFICATE OF SERVICE

13.

I hereby certify that on this the 21st day of May, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

D. Michael Andrews, Esq.
Michael J. Crow, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103

John M. Gibbs, Esq.
Gibbs, Sellers, Vance & Bozeman, L.L.P.
P. O. Box 1276
Demopolis, AL 36732

Gerald Swann, Jr., Esq.
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive, Suite 204
P. O. Box 2148
Montgomery, AL 36102

S. Anthony Higgins, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson
P. O. Box 4128
Montgomery, AL 36103

Robert A. Huffaker, Esq.
R. Austin Huffaker, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery, AL 36101

William P. Sawyer, Esq.
Turner, Wilson & Sawyer
P. O. Box 98
Montgomery, AL 36101

Harlan I. Prater, IV, Esq.
J. Chandler Bailey, Esq.
Mitchell D. Greggs, Esq.
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203

            /s/ Dennis McKenna
            DENNIS McKENNA